Dan APPLEBY and Joan Appleby, Appellants,

v.

John HENDRIX and Clare Hendrix, Appellees.

No. 09 82 109 CV.

Court of Appeals of Texas, Beaumont.

May 17, 1984.

Michael J. Whitten, Denton, for appellants.

Beverly Willis, Waco, for appellees.

## OPINION

BROOKSHIRE, Justice.

The Appellants, Defendants below, appeal to reverse an order overruling their plea of privilege in a deceptive trade practices lawsuit filed in the District Court of Montgomery County. Appellees are residents of Montgomery County and are horse breeders, having a subscription to a publication called "Arabian Horse World". The "Arabian Horse World" is a directory circulated nationally, if not internationally, for the buying, selling, showing and exhibiting of horses of the Arabian breed.

In the issue of June, 1980, the Appellant, Mr. Dan Appleby, authored and placed an advertisement bearing the heading of "Chafa Egyptian Stud". It was addressed to:

"Dear Breeder,

"This letter is written to tell you of our intention to offer our straight Egyptian stallions for purchase. Our operation is small, and these horses need a home where their excellent bloodlines can be effectively used. Some of the finest Egyptian bloodlines in the business are represented and at prices new breeders can afford. So here are the straight Egyptian stallions:

. . . .

"CHAFA RA MONIET (*ibn Moniet El Nefous x Rodoniet) AHRA 154387 3 years grey

Almost white classic stallion out of a *Bint Moniet El Nefous granddaughter. Over 35% Moniet El Nefous blood and close to 50% Nazeer. Much like his father, and grandfather, Morafic; this horse has presence! A super colt.

. . . ."

The record shows that this advertisement appears at page 489 of the "Arabian Horse World", June, 1980, Vol. 20, No. 9.

The Appellees contend that the district court correctly overruled the plea of privilege because the Appellants by a preponderance of the evidence, solicited the transaction in question, in Montgomery County,

within the meaning of *TEX.BUS. & COM. CODE ANN. Sec. 17.56* (Vernon Supp. 1984). Mrs. Clare Hendrix is in the vocation of raising blooded Arabian horses. Mrs. Hendrix subscribed to and received the June, 1980, edition of the publication called the "Arabian Horse World". Portions of this edition are in evidence. This issue of June, 1980, was mailed directly to her at her residence in Montgomery County. The advertisement was a full page one, advertising four distinct Arabian stallions and apparently signed by the advertiser, Dan Appleby. In direct response to this advertisement, which was delivered in Montgomery County and considered, studied and pondered in Montgomery County, Mrs. Hendrix made a telephone call inquiring about a particular stallion known as Chafa Ra Moniet. She first asked the price and availability of Chafa Ra Moniet because, at the time, she had six or eight mares that would be breeding and it would be impossible to take these mares to different stallions. The Appellee, Clare Hendrix, wanted a stallion that could stand at her own farm to breed her own mares on her own acreage. In the initial telephone call, Mrs. Hendrix inquired, primarily, about his age, his pedigree, his availability and to make an appointment to see the stallion. Her purpose was to use the stallion to breed all her mares to him. During the first conversation, the price was quoted at $20,000.00, which was ultimately paid in full as the purchase price of Chafa Ra Moniet. Mrs. Hendrix takes the position that the stallion is infertile. In view of the advertisement, as set out, concerning this stallion, and in view of the infertility of the stallion, Appellees say that this suit is properly brought on the basis of misrepresentations by the Appellants—the main representation involves the suitability for breeding purposes of the stallion.

Appellees vehemently argue that proper venue is in Montgomery County, against these Appellants, under *TEX.BUS. & COM.CODE ANN. Sec. 17.56* (Vernon Supp.1984). Appellees also partially rely on *TEX.REV.CIV.STAT.ANN. Art. 1995, Sec. 30* (Vernon 1964), reading:

"Whenever in any law authorizing or regulating any particular character of action, the venue is expressly prescribed, the suit shall be commenced in the county to which jurisdiction may be so expressly given."

*TEX.BUS. & COM.CODE ANN., Sec. 17.41* (Vernon Supp.1984) provides that this subchapter may be cited as the "Deceptive Trade Practices-Consumer Protection Act." *TEX.BUS. & COM.CODE ANN. Sec. 17.44* (Vernon Supp.1984) mandates that this subchapter shall be liberally construed and applied so as to promote its underlying purposes. Among these are: to protect consumers against misleading and deceptive business practices, breaches of warranty and *to provide efficient and economical procedures to secure such protection.* After a hearing, the trial judge overruled the plea of privilege and retained venue in Montgomery County.

No findings of fact or separately filed conclusions of law were asked of the trial court and none were entered. Under that state of the record, we are to affirm the trial judge under any legitimate marshalling of the facts and correct theory or application of the law. *TEX.BUS. & COM. CODE ANN. Sec. 17.56* (Vernon Supp. 1984), concerning venue, provides, in substance, that an action may be brought in the county in which the alleged act or practice occurred if the claim alleged asks for relief under *TEX.BUS. & COM.CODE ANN. Sec. 17.50* (Vernon Supp.1984) of the same subchapter. *Section 17.50(a)(2),* of the same subchapter, provides, in pertinent part: "breach of an express or implied warranty" or:

"(a)(1) the use or employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated in a subdivision of *Subsection (b) of Section 17.46* of this subchapter." (emphasis added)

We find and hold that the solicitation and the advertisement were made in Montgomery County and were an express warranty. And, further, that *TEX.BUS. & COM.*

CODE ANN. Sec. 17.46 (entitled "Deceptive Trade Practices Unlawful") *(b)(7)* (Vernon Supp.1984), declares that representing that goods or services are of a particular standard, quality or grade, if they are of another, to be false, misleading or a deceptive act or practice. Also representing under *Sec. 17.46(b)(5)* that goods or services have characteristics, ingredients, uses, benefits and qualities which they do not have is a deceptive act or practice. By legislative mandate all of these sub-subdivisions of *Section 17.46(b)(1)* through and including *(b)(23)* are declared to be false, misleading or deceptive acts or practices. And, as well, under *Section 17.46(a)*, such false, misleading or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful and subject to action under *TEX.BUS. & COM.CODE ANN. Sections 17.47, 17.58, 17.60 and 17.61* (Vernon Supp.1984). Under *Section 17.50*, a consumer may maintain an action for damages, under certain circumstances.

We find that the Appellant, Dan Appleby, solicited the transaction in Montgomery County by means of the advertisement in the "Arabian Horse World", within the proper construction of *TEX.BUS. & COM. CODE ANN. Sec. 17.56* (Venue) (Vernon Supp.1984), of the Texas Deceptive Trade Practices—Consumer Protection Act. The trial court could have found, under this record, that the solicitation was made by the Appellant, Dan Appleby, in Montgomery County and also could have found that the Arabian stallion was sterile and valueless for breeding purposes and that, as a legal conclusion, the venue was properly in Montgomery County. *See and compare* Goodfriend and Lynn, *Of White Knights and Black Knights: An Analysis of the 1979 Amendments to the Texas Deceptive Trade Practices Act*, found at 33 Sw.L.J. 941, 999 (1979–1980), where the authors state at 999:

> "The legislative history of the amendments indicates that section 17.56 encompasses mass as well as personal solicitation, and that the defendant may be sued in any county in which his advertising reaches a consumer."

*See and compare* also Curry, *The 1979 Amendments to the Deceptive Trade Practices—Consumer Protection Act*, 32 BAYLOR L.REV. 51, 79 (1980), where the author states:

> "It is apparently not required that the transaction be *personally* solicited, and therefore an impersonal solicitation through the mails or the media would suffice."

In fact, the concept of a personal solicitation was rejected by the legislature by failing to use all the wording and language in Section 17.56, "Venue", Act of June 13, 1979, Ch. 603, S.B. 357, 1 General and Special Laws, Texas, 66th Legislature— Regular Sess.1979, page 1332, as sponsored by Senator Bill Meier.

■ We, then, hold that a direct or personal solicitation is not necessary considering the intention of the legislature. *See Pennington v. Singleton*, 606 S.W.2d 682 (Tex.1980). In the letter addressed to "Dear Breeder," there is this language:

> "Our operation is small, and these horses need a home where their excellent bloodlines can be effectively used. Some of the finest Egyptian bloodlines in the business are represented . . . ."

We construe this to be an expression and representation that the bloodlines are to be continued and that new colts or foals are to be bred. We construe this to be an express warranty that Chafa Ra Moniet was a fertile stud; or, in other words, Chafa Ra Moniet was a good stud horse for the purposes of breeding Egyptian bloodlines, colts and foals in the future. There is another relevant sentence which reads:

> "This is a real opportunity for those of you who wish to acquire top bloodlines for sensible prices."

We construe the words "to acquire top bloodlines for sensible prices" to be an expression and a representation in an express manner that these bloodlines are to continue and that Chafa Ra Moniet was expressly represented as being a fertile stud that could properly breed and impregnate mares. Dan Appleby certainly under-

stood that Clare Hendrix desired to purchase an Arabian stallion for the purposes of breeding the same to the mares she already owned.

We reason that *Big Rock Properties Texas, Inc. v. King,* 613 S.W.2d 804 (Tex. Civ.App.—Houston [14th Dist.] 1981, no writ history) is very persuasive although admittedly not controlling of our case. In *Big Rock Properties Texas, Inc., supra,* the court held that the listing of the Ports of Call Mall, in the yellow pages of the telephone directory, for certain communities in Galveston County, amounted to soliciting business in Galveston County by Big Rock Properties Texas, Inc., and that this soliciting of business in Galveston County was determinative of the proper venue under *Sec. 17.56* of the Texas Deceptive Trade Practices—Consumer Protection Act. We, therefore, hold that the trial judge was correct in holding that venue was proper in Montgomery County.

Considering the whole record before us, we overrule Appellant's points of error 1 and 2 and affirm the trial court's order on venue.

AFFIRMED.