TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00673-CV






Landmark Organization, L.P., Appellant


v.


Tremco Incorporated, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. D-1-GN-05-000406, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 Landmark Organization, L.P., appeals a final summary judgment against it on
claims it had asserted against Tremco Incorporated. In five issues, Landmark argues that the
district court erred in granting Tremco summary judgment as to promissory-estoppel and implied-warranty claims Landmark had asserted and abused its discretion in excluding some of Landmark's
summary-judgment evidence. We will affirm the district court's judgment.

 

BACKGROUND


 This appeal stems from disputes arising during the construction of the Hilton Austin
building that is located next to the Austin Convention Center. In June 2001, Austin Convention
Enterprises, Inc. (ACE), a corporation formed by the City of Austin to handle ownership of
the project, entered into a "Design/Build" contract with appellant Landmark. Under the contract,
Landmark was to oversee and manage construction on ACE's behalf, including the hiring and
supervision of all architects, engineers, and sub-contractors. Landmark hired Ellerbe Becket, Inc.
as the architect for the project.

 Part of Ellerbe's work entailed designing a water-proofing and water-removal system
for a multi-level underground parking garage beneath the hotel building. Simply described, the
system Ellerbe devised included several layers of water-penetration barriers in or around the garage
walls working in concert with drains and pumps to remove water off-site. First, rough-hewn wood
boards, known as "lagging," would be erected against the sides or walls of the excavated opening
in which the garage would be built. A "drainage mat" would then be attached to the lagging, which
would serve to capture any water penetrating gaps in the boards. The drainage mat would also carry
any water it absorbed to a series of "weeps," PVC pipes lined with holes. The water would then
travel through the pipes to sumps, and ultimately would be pumped off-site.

 After the drainage mat was in place, an additional water-resistant barrier was to
be installed over the drainage mat. Then, rebar would be erected over the barrier and "shotcrete"
(a concrete-like material) would be sprayed over the rebar, and the shotcrete would be troweled
smooth to form the walls of the garage. Finally, a slurry of fine particles would be pumped into any
voids between the lagging and the surrounding earth.

 At the recommendation of its waterproofing consultant, Robert (Zeke) Zdenek,
Ellerbe specified that the water-resistant barrier to be installed over the drainage mat would be
Paraseal, a water-proofing membrane manufactured by appellee Tremco. Paraseal consists of a high-density polyethylene sheet, one side of which is coated with a layer of bentonite, a naturally-occurring clay that expands when exposed to water. There was evidence that Landmark and perhaps
other parties involved with the project raised questions with Ellerbe regarding the choice of Paraseal,
a bentonite product, versus a different type of membrane product manufactured by W.R. Grace. In
September 2001, Ellerbe's project director wrote Landmark and explained that "After research of
available products and in consultation with PSG [Zdenek's firm], our waterproofing consultant, our
professional judgment led us to the selection of this material over the rubberized asphalt system
offered by W.R. Grace. Key factors which we considered included 1) Number of past successful
projects using the product; 2) Proven track record, i.e., years in existence; 3) Applicability to the
specific conditions of this project; and 4) Coverage or limitations as expressed in the Warranty."

 Landmark presented summary-judgment evidence that Tremco offered a five-year
express warranty on Paraseal's waterproofing performance if installed according to certain Tremco
specifications. (1) In his deposition, Zdenek, Ellerbe's waterproofing consultant, testified that he
regarded this warranty as superior to that offered on the competing product because it covered both
materials and labor to repair any leaks or other failures. As recommended by Zdenek and Ellerbe,
the project proceeded with Paraseal being specified for use in waterproofing the underground garage. 

 The summary-judgment record reflects that a goal of Landmark and Ellerbe in regard
to the garage waterproofing was ensuring that the Paraseal was installed in a manner that would
ultimately satisfy Tremco's requirements for issuing its warranty. The construction specifications
for the below-grade waterproofing included the following "Special Warranty" provision:


Manufacturer/Contractor/Installer shall stand behind installed system for a period of
five years from Date of Substantial Completion against [water infiltration]. When
notified in writing from Owner, Manufacturer/Contractor/Installer shall promptly and
without inconvenience and cost to Owner correct said deficiencies.



 Effective October 11, 2001, Landmark entered into a subcontract with Alpha
Insulation & Waterproofing, Inc., to install the Paraseal. The "Scope of Work" for Alpha under the
contract included providing all equipment, labor, and materials necessary to "[i]nstall complete
Paraseal waterproofing system by Tremco on all sub-grade vertical walls," "[p]rovide all materials,
equipment and labor required for complete installation," and "[p]rovide complete waterproofing
system to meet requirements for manufacturer's 10-year warranty."

 Alpha's work installing the Paraseal waterproofing system began in October 2001
and continued through February of the following year. During this phase of the project, Rob Brath,
a "District Manager" or sales representative for Tremco, visited the construction site approximately
eight different times. During his deposition, Brath testified that his role was "[j]ust basically to see
what's going on at the job site, how installation is going, and hopefully to address anything that may
have come up that somebody may want to ask questions about," as well as volunteering guidance
to installers if he noticed a problem with their work. Part of the purpose of his role, Brath explained,
was to help head off problems in the installation of the sort that would cause Tremco ultimately to
refuse to issue its warranty. Once work was completed and an owner or applicator applied for the
Tremco warranty, Brath added, he would be consulted by Tremco's warranty personnel to determine
whether there were conditions or problems in the installation that should prevent Tremco from
issuing its warranty. (2)

 In November or December, D-7, a company that served as a waterproofing consultant
to Levien-Rich, one of ACE's consultants on the project, prepared a report raising a number
of concerns with the ongoing installation of the garage's waterproofing system. These concerns
included the possible premature activation of Paraseal's bentonite component by rainwater,
poor installation or damage to the Paraseal, and gaps in the lagging of dimensions that compromised
it as "proper backing for this type of bentonite system." The report elaborated that "[t]he gaps are
larger than 1" and in most cases are greater than 2"-3"," and stated, "The specifications and
manufacturer require any opening over 1" to be covered or filled." Levien-Rich forwarded excerpts
from this report, along with photographs D-7 had taken, to Landmark, with the following comments:


Based on [D-7's] observation, their conclusions were that:


1) Certain elements of the installation are poor and that, if not addressed, the
waterproofing system will not perform as intended.


2) The manufacturer's representative should be contacted to review the
conditions noted in the report and the photographs. The manufacturer
providing the warrant[y] and the Designer's consultants should also review
the report and photographs.


3) Prior to covering any area with Shotcrete, the manufacturer should provide
written acceptance of the area.


In the aftermath of this letter, Landmark and Alpha undertook various efforts to address D-7's
concerns. Tremco's Brath was consulted in connection with these efforts and, on January 15, 2002,
Brath met at the job site with representatives from Landmark and Alpha, as well as Zdenek, Ellerbe's
waterproofing consultant. On January 18, Brath wrote Alpha stating the following:


On January 15, 2002, Alpha, Landmark, Robert Zdenek and Myself me[t] to address
the concerns [of] the consultant D7. I understand their concerns and can assure
all parties that each item is being addressed. Tremco's recommendation is any
gap greater than 3 inches, not 1 inch, needs to be filled or covered. Tremco allows
gaps up to 3 inches in the lagging, when Tremdrain [another Tremco product
being used on the project] and Paraseal are used together. All voids over 3 inches
are being spanned with plywood. All penetrations are being detailed per Tremco's
recommendations. 


After walking the job site again on January 15, 2002, and reviewing the necessary
details for this job, I see no issues that would affect the warranty that Tremco will
issue upon completion of the installation.



 On January 24, Ellerbe's project director wrote Landmark and indicated that, based
on Brath's letter, Ellerbe would be amending its construction specifications in accord with Brath's
statements regarding the size of permissible gaps in the lagging:


 After reviewing Mr. Robert Brath's letter dated January 18, 2002 in which
he states that Tremco will accept gaps up to 3 inches without filling or covering
and that this condition will not jeopardize any warranties related to their product,
Ellerbe Becket can amend specification Section 7130 to align with his statement.
Please note that the original requirement for filling any gaps greater than 1 inch came
from the Tremco's technical specification. Mr. Brath will be requesting a letter from
Tremco's Technical Services Division also addressing this question.



Enclosed with the letter, along with a copy of Brath's letter, was a copy of revised construction
specifications for "Section 7130" ("Below-Grade Waterproofing") reflecting "Revised Construction
Issue No. 3 (Revision 1), dated 1/24/02." In Part 3 of the document ("Execution"), section 3.2
("Preparation"), is reflected, "Revision Note: Revised lagging gap preparation per CI-3 Revision 1,"
after which is the following, in boldface type that contrasts with the text in the rest of the document: 


A. Surface Preparation:


 1. All tie holes and gaps or protrusions in the wood lagging surface
to receive sheet waterproofing directly applied to the lagging
sheet shall not be greater than one inch and shall be filled or
covered as required by waterproofing manufacturer.


 2. All gaps in the wood lagging surface to receive drainage mat
directly applied to the lagging as a substrate for the sheet
waterproofing shall not be greater than three inches and shall be
filled or covered as required by waterproofing manufacturer.



 Installation of the Paraseal was ultimately completed by the end of February 2002. 
In early March, Brath visited the project site and testified as to his observations: "At that point in
time, it was obvious that there was an issue with the building itself . . . a failure in the system per se,"
as there was water coming through the walls. Thereafter, Landmark, Alpha, and others pursued
various corrective measures in an attempt to remedy the problems.

 Alpha eventually requested that Tremco issue an express performance warranty. 
After consulting with Jason Muse, who had since replaced Brath as Tremco's contact on the
Hilton project, Tremco declined to provide any other warranties other than the one described
in the product data sheet provided to Landmark prior to the start of the project. In a letter dated
February 6, 2004, Tremco explained that "[w]e have been advised that there are several potential
problems related to the manner in which our Paraseal membrane was used and installed on
this project including, but not limited to, abuse by contractors (which was apparently due in part
to improper coordination of trades on the job) and a failure to properly protect and detail the
termination edge of the membrane. It is also our understanding that there were numerous other
errors in the completion of this project that have the potential to adversely affect our membrane,
including an insufficient drainage system." "Under these circumstances," the letter explained,
"Tremco is not in a position to issue any additional warranties regarding our Paraseal membrane."
Consequently, "[t]he only warranty in effect from Tremco in connection with this project is the one
set forth in our product data sheet, which was provided prior to the start of the project."

 In 2005, Landmark sued Ellerbe, Alpha (and Alpha's surety, Hartford Fire Insurance
Co.), and Tremco. Against Tremco, Landmark asserted causes of action for negligence, breach of
implied warranties of merchantability and fitness for a particular purpose, and promissory estoppel.
Landmark's promissory-estoppel claim sought to enforce what it asserted was Tremco's promise to
issue its express performance warranty at the conclusion of the project. Alpha also asserted cross-claims against Tremco for allegedly supplying it with a defective product.

 Tremco filed traditional and no-evidence summary-judgment motions. In one motion,
Tremco challenged Landmark's promissory-estoppel claim, arguing that there was no evidence
that (1) Tremco made any promise to Landmark; (2) Landmark reasonably and substantially relied
on any such promise to its detriment; (3) Landmark's reliance was foreseeable to Tremco;
(4) injustice could only be avoided by enforcing the alleged promise; or (5) Landmark incurred
any damages arising from the alleged promise. In its other motion, Tremco challenged Landmark's
warranty and negligence claims. Among other grounds, Tremco asserted that (1) because ACE
owned the parking garage, Landmark lacked standing to assert the claims; (2) Landmark was not
in privity with Tremco; (3) Tremco had disclaimed any implied warranties; (4) Landmark had
no evidence that the Paraseal used was defective or not reasonably fit; and (5) the economic-loss
rule barred Landmark's negligence claim. Landmark filed a response to each motion. Tremco
subsequently objected to some of Landmark's summary-judgment evidence, including portions of
an affidavit prepared by Landmark representative Lisa Houston, which Landmark presented in
opposition to both summary-judgment motions. 

 Following separate hearings on the two summary-judgment motions, the district court,
in a single order, granted both motions without specifying its grounds and excluded portions of
Ms. Houston's affidavit. (3) On the same day, Alpha non-suited its cross-claims against Tremco.
Thereafter, Landmark settled its claims against Ellerbe and proceeded to trial against Alpha and
Hartford, eventually securing a jury award of over $400,000 in damages. The district court rendered
final judgment on the verdict, which it later modified. (4)

 Thereafter, Landmark appealed the summary-judgment order, while Alpha appealed
the adverse judgment on Landmark's claims against it. Ultimately, Landmark and Allied settled, the
district court vacated its prior judgment and rendered a judgment of dismissal to effectuate the
settlement, (5) and we dismissed Allied's appeal. 

ANALYSIS

 Landmark brings five issues on appeal. In its first issue, Landmark argues that
it presented sufficient summary-judgment evidence to raise a genuine issue of material fact as to
each element of its promissory-estoppel claim. In its second and third issues, Landmark argues that
summary judgment on its implied-warranty claims was improper because (1) certain provisions
of the Design/Build contract gave it standing to assert those claims, (2) it raised a genuine issue of
material fact on each element of those claims, and (3) Tremco failed to conclusively establish
its affirmative defense of disclaimer as a matter of law. Further, although it does not challenge the
district court's summary judgment as to its negligence claim, Landmark argues in its fourth issue that
if the economic loss rule bars its negligence claim, it follows that Landmark must have a cause of
action for breach of implied warranty. In its fifth issue, Landmark contends that the district court
abused its discretion in excluding portions of Lisa Houston's affidavit.


Standard of review

 We review the district court's summary judgment de novo. Valence Operating Co.
v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003). When reviewing a summary judgment, we take as true all
evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any
doubts in the non-movant's favor. Valence Operating Co., 164 S.W.3d at 661; Knott, 128 S.W.3d
at 215. Summary judgment is proper when there are no disputed issues of material fact and the
movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A defendant who
conclusively negates at least one of the essential elements of each of the plaintiff's causes of action
or who conclusively establishes all of the elements of an affirmative defense is entitled to summary
judgment. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995). 

 A no-evidence motion for summary judgment must be granted if, after an adequate
time for discovery, (1) the moving party asserts that there is no evidence of one or more essential
elements of a claim or defense on which an adverse party would have the burden of proof at trial,
and (2) the non-movant fails to produce more than a scintilla of summary-judgment evidence
raising a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i). A no-evidence
summary judgment is essentially a directed verdict granted before trial, to which we apply
a legal-sufficiency standard of review. King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51
(Tex. 2003); Perdue v. Patten Corp., 142 S.W.3d 596, 603 (Tex. App.--Austin 2004, no pet.). A
no-evidence summary judgment will be sustained when: (1) there is a complete absence of evidence
of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than
a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. King Ranch,
118 S.W.3d at 751. More than a scintilla of supporting evidence exists if the evidence would
allow reasonable and fair-minded people to differ in their conclusions. Id. "Less than a scintilla of
evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or
suspicion' of a fact." Id. (quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)).

 If the trial court does not specify the ground or grounds on which it relied in granting
summary judgment, we must affirm if any of the grounds presented in the motion were meritorious.
State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993); Knott, 128 S.W.3d at 216.


Promissory estoppel

 In its first issue, Landmark asserts that the district court erred in granting
summary judgment as to its promissory-estoppel claim because a fact issue exists as to each of the
claim's elements. Promissory estoppel is a legal doctrine that may permit enforcement of a promise
that is unenforceable as a matter of contract law. The doctrine "does not create a contract right that
does not otherwise exist," Sun Oil Co. (Delaware) v. Madeley, 626 S.W.2d 726, 734 (Tex. 1981);
see Hruska v. First State Bank of Deanville, 747 S.W.2d 783, 785 (Tex. 1988), but instead "prevents
a party from insisting upon his strict legal rights"--i.e., the right to avoid his promise as not
contractually binding--"when it would be unjust to allow him to enforce them." In re Weekley
Homes, L.P., 180 S.W.3d 127, 133 (Tex. 2005) (quoting Wheeler v. White, 398 S.W.2d 93, 96
(Tex. 1965) (citing Restatement (Second) of Contracts § 90 (1981))). Promissory estoppel is thus
"defensive" in nature. Wheeler, 398 S.W.2d at 96. The doctrine's underlying rationale, as the
supreme court explained in Wheeler, is "where one party has by his words or conduct made to the
other a promise of assurance which was intended to affect the legal relations between them and to
be acted on accordingly, then, once the other party has taken him at his word and acted on it, the
party who gave the promise cannot afterward be allowed to revert to the previous relationship as
if no such promise had been made." Id. The elements of promissory estoppel are: (1) a promise;
(2) foreseeability of reliance by the promisor; (3) actual, substantial and reasonable reliance by
the promisee to its detriment; and (4) injustice can be avoided only by enforcement of the promise.
In re Weekley Homes, L.P., 180 S.W.3d at 133.

 In this case, Landmark attempts to invoke promissory estoppel to enforce what it
characterizes as a promise by Tremco to issue its express performance warranty once installation of
the Paraseal was complete. (6) As evidence of this asserted promise, Landmark has relied primarily
on Brath's letter of January 18, 2002, regarding the concerns raised by D-7, especially the last
portion of the concluding paragraph: "After walking the job site again on January 15, 2002, and
reviewing the necessary details for this job, I see no issues that would affect the warranty that
Tremco will issue upon completion of the installation." In Landmark's view, Brath's statement is
a promise that "all concerns have been addressed and all parties, including Landmark, can be assured
that upon completion of the installation of the Tremco products, Tremco 'will issue' the warranty"
and that it was reasonably foreseeable to Tremco that Landmark would rely on this statement as a
promise that a warranty would issue. We disagree.

 To be enforceable through promissory estoppel, the asserted "promise" must
be sufficiently specific and definite that it would be reasonable and justified for the promisee to
rely upon it as a commitment to future action. See Alpha Vista, Inc. v. Holt, 987 S.W.2d 138, 141-42 (Tex. App.--Houston [14th Dist.] 1999, pet. denied); Gilmartin v. KVTV-Channel 13,
985 S.W.2d 553, 558-59 (Tex. App.--San Antonio 1998, no pet.). "A promise must also be
more than speculation of future events, a statement of hope, an expression of opinion, an
expectation, or an assumption." Esty v. Beal Bank S.S.B., 298 S.W.3d 280, 305 (Tex. App.--Dallas
2009, no pet.) (citing City of Beaumont v. Excavators & Constructors, Inc., 870 S.W.2d 123, 138
(Tex. App.--Beaumont 1993, writ denied)). 

 On its face, Brath's letter is addressed to specific concerns raised by D-7 in November
or December 2001--most prominently, the issue regarding the 3-inch versus 1-inch gaps in the
lagging. He speaks from the standpoint of "walking the job site again on January 15, 2002, and
reviewing the necessary details for this job." At that time, the evidence is undisputed, installation
of the Paraseal was over a month from completion. At that juncture, Brath offers only the following:
"I see no issues that would affect the warranty that Tremco will issue upon completion of the
installation." Furthermore, there was undisputed evidence that Tremco would issue such a warranty
only after the owner or applicator had submitted a written request to the company's warranty
department and the department determined, at that time, whether there were issues that would
preclude the warranty's issuance.

 Viewing the evidence in the light most favorable to Landmark, Brath states only
that, based on his observations of the current state of installation, he saw no problems that would
prevent issuance of Tremco's warranty. It was undisputed that his statement was based on his
own observations of the work that had been completed at that juncture and the information available
to him at that time. There was much installation of Paraseal yet to be completed. Under such
undisputed circumstances, a reasonable fact finder could only conclude that the statement in the
letter was an "expression of opinion" or "an expectation." See Esty, 298 S.W.3d at 305. We further
conclude that the statement was not sufficiently specific and definite to support a promissory
estoppel claim. Any reliance by Landmark on Brath's statement as an unconditional promise that
Tremco would ultimately issue a performance warranty after the remaining work was completed
would not have been reasonable or justified as a matter of law. See Alpha Vista, Inc., 987 S.W.2d
at 141-42; Gilmartin, 985 S.W.2d at 558-59; City of Beaumont, 870 S.W.2d at 138. To hold
otherwise, as Tremco suggests, would require Tremco to issue such a warranty regardless of whether
"Alpha could have installed Tremco's product upside down and backwards, and other trades could
have subjected it to abuse through project completion."

 In reply, Landmark urges that "there is no evidence whatsoever that anything changed,
any condition arose, or any reason developed for Tremco not to thereafter issue a warranty, save
and except the failure of the Tremco Paraseal product." Thus, it reasons, to the extent Brath's letter
contemplates that the warranty might not issue because of intervening future developments, that fact
"is totally irrelevant because no condition ever arose that would cause the promise in the letter to be
revoked." This characterization of the summary-judgment evidence, even if supported by the record,
does not change our analysis. While Landmark's argument might be relevant to whether Tremco
breached what Landmark views as Tremco's "promise" to issue the warranty, it remains that the
"promise" was insufficiently definite and specific to be enforceable through promissory estoppel
in the first place.

 Landmark also urges that Tremco made "multiple promises to provide a
warranty" prior to Brath's letter. In support, it points to the "Special Warranty" provision of
Ellerbe's construction specifications, the requirement in Alpha's subcontract with Landmark
requiring it "[p]rovide complete waterproofing system to meet requirements for manufacturer's 10-year warranty," and Brath's acknowledgments during his deposition that Tremco was being asked
to provide its warranty and that part of his job was to work with installers so they could qualify for
it. We cannot conclude that any of this evidence raises a fact issue that Tremco made a promise to
issue an express performance warranty that could be enforced by promissory estoppel. 

 We overrule Landmark's first issue.


Implied warranties

 In its second and third issues, Landmark argues that the district court erred in granting
summary judgment as to its implied-warranty causes of action. Landmark contends that it had
standing to assert these claims, that it raised a fact issue as to each element of these claims, and that
Tremco failed to conclusively establish its disclaimer defense. In its fourth issue, Landmark urges
that assuming the economic loss rule barred Landmark's negligence claims (which it does not
dispute), Landmark must have a cause of action for breach of implied warranties. Our disposition
of Landmark's contentions regarding Tremco's disclaimer defense is dispositive.

 An implied warranty of merchantability and fitness for a particular purpose may arise
in a contract for the sale of goods unless expressly excluded or modified by conspicuous language. 
See Tex. Bus. & Com. Code Ann. §§ 2.314 (merchantability), 2.315 (fitness for a particular
purpose), 2.316 (exclusion provision) (West 1994); Cate v. Dover Corp., 790 S.W.2d 559, 561-62
(Tex. 1990). The evidence conclusively showed that, as part of the submittal process, Tremco
provided Alpha, and Alpha provided Landmark, product data sheets for the Paraseal Alpha
purchased for use on the project. (7) Each of the product data sheets contained a section titled
"Warranty," with text substantively identical to the following:


Tremco warrants its Paraseal Membranes to be free of defects in materials, but
makes no warranty as to appearance or color. Since methods of application and on
site conditions can affect performance, Tremco makes no other warranty, expressed
or implied, including warranties of MERCHANTABILITY and FITNESS FOR
A PARTICULAR PURPOSE, with respect to Paraseal Membranes. Tremco's sole
obligation shall be, at its option, to replace or to refund the purchase price of the
quantity of Paraseal membrane proved to be defective and Tremco shall not be liable
for any loss or damage including incidental or consequential damages arising from
the use of Paraseal Membranes.



As Landmark emphasizes, it "paid for the Paraseal through its payments to Alpha, which explicitly
included the cost of the Tremco materials" in its invoices.

 In attempting to avoid this disclaimer, Landmark suggests that the "Warranty"
statements on the product-data sheets, including the disclaimers, did not in themselves have
any effect, but merely referred to the express performance warranty that Tremco never issued.
Consequently, Landmark reasons, "Tremco cannot now properly rely on disclaimers that would
have been included in the express warranty while at this same time admitting that no such warranty
exists." (emphasis in original). Similarly, Landmark urges that Tremco's product data sheets
were merely "informational material" and "not a contract." We disagree with Landmark's
assessment of the legal effect of the product data sheets' warranty and disclaimers. See PPG Indus.
v. JMB/Houston Ctrs. Ltd. P'ship, 146 S.W.3d 79, 100 (Tex. 2004) (advertisement containing
express warranty printed in trade magazine could be basis of express warranty claim); Cate,
790 S.W.2d at 560 (analyzing express warranty and disclaimer of implied warranties appearing in
product advertisement); Appleby v. Hendrix, 673 S.W.2d 295, 297 (Tex. App.--Beaumont 1984,
no writ) ("We find and hold that the solicitation and the advertisement . . . were an express
warranty.").

 Furthermore, contrary to Landmark's premise that the product data sheet warranty and
disclaimers are somehow tied to the express performance warranty that is the subject of Landmark's
promissory-estoppel claim, the summary-judgment record conclusively showed that the former
express warranty was distinct from the latter. In contrast to the product data sheet warranty, which
is explicitly limited to "defects in materials" and confines Tremco's obligation to replacing or
refunding the purchase price of any Paraseal proved to be defective, Landmark depicted the un-issued express warranty as a product and performance warranty issued after installation that would
cover both materials and labor to repair any leaks or failures. Moreover, when denying Alpha's
request that it issue the broader warranty after installation was completed, Tremco distinguished
between the two express warranties: "Tremco is not in a position to issue any additional warranties
regarding our Paraseal membrane. The only warranty in effect from Tremco in connection with this
project is the one set forth in our product data sheet, which was provided prior to the start of the
project." (Emphasis added). Landmark refers us to no contrary evidence that these warranties were
somehow one and the same. 

 Landmark also argues that the disclaimers are not effective as to it because Tremco
provided the product data sheets directly to Alpha and not Landmark. It reasons that "even if
Tremco could rely on the disclaimers in the Data Sheet warranty, it could only rely on them if it
was Alpha claiming the breach." At the same time, however, Landmark argues that it can enforce
implied warranties on Tremco's product because it is in vertical privity with Alpha. In Hou-Tex, Inc.
v. Landmark Graphics, the Fourteenth Court of Appeals rejected a similar attempt by a party to
assert claims predicated on privity with the defendant while disclaiming when it came to enforcing
contractual provisions:


Hou-Tex uses its remoteness from the original sales transaction as both a sword and
a shield: it asserts its ability to sue, but uses its distance from the sales transaction
to deny Landmark its UCC protections. Hou-Tex cannot have it both ways. If a
third party can sue a seller . . . the seller's disclaimers of warranties apply to the
third party.



26 S.W.3d 103, 111-12 (Tex. App.--Houston [14th Dist.] 2000, no pet.). The same principle
applies here: if any implied warranty runs to Landmark's benefit, any effective disclaimer of that
warranty must also run to counter it. See Welwood v. Cypress Creek Estates, Inc., 205 S.W.3d 722,
728 (Tex. App.--Dallas 2006, no pet.) ("remote purchasers . . . may not rely on the absence of
privity to bring causes of action against a remote seller and at the same time assert that privity is
required for the seller to rely on contractual disclaimers").

 Finally, we must briefly address Landmark's assertion that if its negligence claim is
barred by the economic loss rule, it must have a viable implied-warranty claim. Landmark presents
no authority, and we find none, for the proposition that if a claim is barred by the economic loss rule,
it follows that the claimant must have a valid UCC implied-warranty claim. Among other things,
Landmark overlooks the potential implications of warranty disclaimers like those here. 

 We overrule Landmark's second, third, and fourth issues.


Evidentiary rulings

 In its fifth issue, Landmark argues that the district court abused its discretion
in excluding portions of Lisa Houston's affidavit. We review a trial court's ruling admitting or
excluding evidence for abuse of discretion. State v. Bristol Hotel Asset Co., 65 S.W.3d 638, 647
(Tex. 2001). A trial court abuses its discretion when it rules on the admissibility of evidence in
an arbitrary or unreasonable manner or without reference to guiding rules or principles. Carpenter
v. Cimarron Hydrocarbons Corp., 98 S.W.3d 682, 687 (Tex. 2002). We must uphold a trial court's
evidentiary ruling if there is any legitimate basis in the record to support it. Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998); Taylor v. Texas Dep't of Protective &
Regulatory Servs., 160 S.W.3d 641, 650 (Tex. App.--Austin 2005, pet. denied). Additionally, we
will not reverse a trial court for an erroneous evidentiary ruling unless the error was reasonably
calculated to cause and probably did cause the rendition of an improper judgment. See Tex. R. App.
P. 44.1; see also Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989). To show such
harm from an evidentiary ruling, the complaining party usually must demonstrate that the judgment
turns on the particular evidence excluded or admitted. City of Brownsville v. Alvarado, 897 S.W.2d
750, 753-54 (Tex. 1995).

 The district court excluded the following statements from Houston's affidavit:



 After testifying that Landmark had executed a subcontract with Alpha and
authenticating an attached copy of the contract, Houston added, "Alpha, in
turn, negotiated with Tremco to provide the Paraseal product that would be
installed as part of the waterproofing system." The district court sustained
Tremco's objections to the latter statement on the bases of hearsay and lack
of personal knowledge.


 


 Houston stated that "Landmark . . . was told that a five-year express warranty
that the Paraseal would perform for this application would be issued." The
district court sustained Tremco's hearsay objection to his statement.


 


 Houston testified that "Landmark relied on the promise that Tremco would
issue an express warranty that the Paraseal would perform for this
application." The district court sustained Tremco's objections based on
hearsay and lack of personal knowledge.

 Houston averred that "[t]he garage waterproofing system was defective and
leaked." The district court sustained Tremco's objection that "was defective"
was "conclusory" and lacked foundation.


 


We find no abuse of discretion in the district court's exclusion of this evidence.

 Affidavits must be based on personal knowledge in order to be competent
summary judgment evidence of the facts stated therein. Tex. R. Civ. P. 166a(f); Trostle v. Combs,
104 S.W.3d 206, 214 (Tex. App.--Austin 2003, no pet.). Merely reciting that the affidavit is made
on personal knowledge is insufficient. Humphreys v. Caldwell, 888 S.W.2d 469, 470 (Tex. 1994);
Radio Station KSCS v. Jennings, 750 S.W.2d 760, 761-62 (Tex. 1988). The affiant must disclose
the basis upon which he has personal knowledge of the facts asserted. Id.

 Houston averred that she was "capable of making [each] affidavit on behalf
of Landmark Organization, L.P., which is personally acquainted with the facts herein stated, which
are all true and correct." However, she never explained how she acquired personal knowledge
concerning the above facts, or how she would have through her role with Landmark. While Houston
did state that "I am the current Secretary of the General Partner for Landmark," she did not elaborate
as to how she would have acquired personal knowledge of the facts in this role. Among other things,
she never explains how serving as "the current Secretary of the General Partner of Landmark" as of
the date she signed her affidavit--September 20, 2007--would afford her personal knowledge of
events that occurred in 2001 and 2002. Likewise, the district court did not abuse its discretion in
excluding as hearsay Houston's statements regarding facts that, especially given her lack of personal
knowledge, she necessarily would have acquired from third parties. Nor did the district court abuse
its discretion in excluding Houston's characterization of the "garage waterproofing system" as
"defective" as an unsupported conclusion.

 We overrule Landmark's fifth issue.


CONCLUSION

 Having overruled all of Landmark's issues on appeal, we affirm the district court's
judgment.



 __________________________________________

 Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: June 30, 2010
1. Although the record is not entirely clear concerning the precise scope of this express
warranty, any discrepancies in the evidence are not material to our analysis. In any event, Landmark
does not assert that it is entitled to relief based upon a breach of express warranty claim.
2. Brath testified that his understanding of the warranty was that it would cover the cost of
the material and, in the event of a failure, "the replacement up to the dollar value of the material to
the owner."
3. The Honorable Margaret Cooper heard both summary-judgment motions and the
evidentiary objections, and issued a letter informing the parties that she was granting both
motions and sustaining some of Tremco's evidentiary objections. However, it was the Honorable
Stephen Yelenosky who ultimately signed the above-mentioned order.
4. This judgment was signed by the Honorable Orlinda Naranjo. Because she signed the
judgments making Judge Yelenosky's summary-judgment order final, she is identified in our caption
as "Judge Presiding."
5. Judge Naranjo also signed this order and judgment. She further signed an order
memorializing that Alpha's non-suit of its cross-claim against Tremco, combined with the prior
summary-judgment order on Landmark's claims against Tremco, constituted a final disposition of
all claims against Tremco.
6. Based on this theory, Tremco seeks to recover over $2 million in damages it attributes
to the fact that Tremco ultimately did not issue an express performance warranty, including "the
cost to remedy or correct materials or construction defects, the cost of change orders to other
subcontractors because of materials or construction defects, and costs associated with construction
delays resulting from materials or construction defects" that, in Landmark's view, it would have
avoided and/or Tremco would have absorbed had the warranty been issued. As the question was not
presented as a ground in Tremco's summary-judgment motion, we express no opinion as to whether
these sorts of damages are recoverable under a promissory-estoppel theory. See Bechtel Corp.
v. CITGO Prods. Pipeline Co., 271 S.W.3d 898, 926-28 (Tex. App.--Austin 2008, no pet.)
(distinguishing reliance damages, which are recoverable under a promissory-estoppel theory, from
expectancy damages, which are not).
7. The evidence showed that Landmark received the product data sheets from Alpha and
"approved" them on October 12, 2001, one day after entering into the subcontract with Alpha to
install the Paraseal.