Robert GILMARTIN, Appellant,

v.

KVTV—CHANNEL 13, Corpus Christi Broadcasting Co., Inc., Corpus Christi Broadcasting Co., Inc., d/b/a KVTV—Channel 13, K–Six Television, Inc., K–Six Television, Inc., d/b/a KVTV—Channel 13, Appellees.

No. 04–98–00151–CV.

Court of Appeals of Texas, San Antonio.

Dec. 23, 1998.

Julio A. Garcia, Law Offices of Julio A. Garcia, Laredo, for Appellant.

Glenn Levy, Baldemar Garcia, Jr., Person, Whitworth, Ramos, Borchers & Morales, LLP, Laredo, for Appellee.

Before ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice.

## OPINION

CATHERINE STONE, Justice.

Robert Gilmartin challenges the granting of a motion for summary judgment. Gilmar-

tin filed causes of action for breach of contract, wrongful termination, breach of promise of job security, intentional infliction of emotional distress, fraud, and promissory estoppel. Because we do not find that a formal agreement was made sufficient to modify at-will employment, we affirm the trial court's granting of the motion for summary judgment.

## FACTUAL BACKGROUND

In August of 1989, Vann Kennedy, acting as an agent of KVTV, offered Robert Gilmartin a job as station manager. Gilmartin accepted. Gilmartin asserts that under the terms of this oral agreement, he was to work from year to year, and the contract would be renewed for one year terms, so long as his work was satisfactory. While Gilmartin asserts in his pleadings that he would not be fired except for good cause, Gilmartin's affidavits in response to KVTV's motion for summary judgment and interrogatories avers that Kennedy requested that Gilmartin's employment would continue as long as his work was satisfactory, and that employment for more than one year was "doable."

In November of 1990, Gilmartin received a Notice of Termination of Employment. The notice indicated that because Gilmartin had caused the company's profits to decrease, his employment was terminated. Gilmartin believes that he performed every condition and obligation under the contract adequately and that he gave KVTV no reason to terminate him. KVTV argues that Gilmartin's employment was at-will, and thus, Gilmartin could have been terminated for any reason or no reason at all.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment will be granted if the evidence and pleadings introduced at trial show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response. TEX.R. CIV. P. 166a(c). Summary judgment allows the courts to eliminate unmeritorious claims and untenable defenses, but should not deprive litigants of their right to a full hearing on the merits of any real issues of fact. *Compton v. Calabria,* 811 S.W.2d 945, 949 (Tex.App.—Dallas 1991, no writ).

The standards for reviewing a summary judgment are:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. (2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. (3) Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985). Additionally, a summary judgment that involves the credibility of affiants will not be granted since it cannot be said that no genuine issue of fact exists. *See Home Improv. Loan Co. v. Lowe,* 324 S.W.2d 939, 941 (Tex.Civ.App.—Fort Worth 1959, no writ). Gilmartin contends that the summary judgment was erroneously granted as he has asserted six valid causes of action.

## CONTRACTUAL CLAIMS

Under his first, second, and sixth points of error, Gilmartin asserts that summary judgment was improperly granted for his claims for breach of contract, wrongful discharge, and breach of promise of job security. These causes of action are all premised on the allegation that Gilmartin's employment was contractual. Thus, we first consider whether Gilmartin's employment was contractual or at-will.

The general rule in Texas, and in most states, is that "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex.1998). Such at-will employment, however, may become contractual based on oral statements of those in authority. *See id.* To contractually bind an employer, "the employer must unequivocally indicate a definite intent to be

bound not to terminate the employee except under clearly specified circumstances." *Id.* General promises or assurances that an employee will not be discharged if he performs satisfactorily or that the employee will only be terminated for "good cause" do not constitute a binding contract. *Id.* An employee must reveal a more formal agreement with the employer to modify at-will employment. *See id.*

According to Gilmartin's pleadings, Gilmartin and KVTV entered an oral agreement that Gilmartin would be employed as station manager. Under the contract, Gilmartin would work from year to year, and the contract would be automatically renewed for successive one year terms, so long as his work was satisfactory. The response to the interrogatory and corresponding affidavit do not indicate that anything more than assurances were given to Gilmartin concerning the duration of his employment. Gilmartin asserts that Kennedy informed him of his annual salary, vacation time, and possible future raises, that Kennedy promised that his contract was to be renewed from year to year contingent on satisfactory performance, and that a commitment by KVTV for one to three years was "very doable." Kennedy also assured him that a written agreement would not be necessary.

■ Accepting Gilmartin's pleadings as true, Gilmartin still has not presented evidence to indicate that KVTV unequivocally indicated a definite intent not to terminate.

The standard set forth in *Brown* requires a more formal agreement. *See Brown,* 965 S.W.2d at 502 (holding that employee who relocated relying on employer's assurances that she would not be terminated without good cause did not have a contractual employment relationship). Thus, KVTV did not modify Gilmartin's at-will employment to a specific contractual arrangement. Because breach of contract, wrongful termination, and promise of job security are all causes of action that require contractual employment, the trial court correctly granted summary judgment on these issues.[1] Gilmartin's first, second, and sixth points of error are overruled.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ The elements of a claim for the intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; and (3) the defendant's actions caused the plaintiff severe emotional distress. *See Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993). Whether the defendant's conduct is so extreme and outrageous as to permit recovery is initially a question for the court. *See Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993); *Saucedo v. Rheem Mfg. Co.,* 974 S.W.2d 117, 123 (Tex.App.—San Antonio 1998, pet. denied). Outrageous conduct is that which goes beyond all possible bounds of

---

1. Gilmartin asserts that breach of contract can also be based on a promise of indefinite job security. While "promise of job security" appears to be just another way of arguing breach of contract, Gilmartin seems to argue under this point of error that the Statute of Frauds does not bar his causes of action or that the oral promises made to him are not so indefinite as to prevent a finding of a contract. He relies on *Morgan v. Jack Brown Cleaners, Inc.,* 764 S.W.2d 825 (Tex. App.—Austin 1989, writ denied) and *Hatridge v. Day & Zimmermann,* 789 S.W.2d 654 (Tex. App.—Texarkana 1990, no writ). *Hatridge* involved an implied understanding of indefinite job security, but the central issue was whether the plaintiff's claims were preempted by federal law. 789 S.W.2d at 656. Thus, it is inapposite. *Morgan,* on the other hand, involved an employee who was orally promised that if her department ever closed, the employer would find another job for her. 764 S.W.2d at 826. The court found

this language specific enough to modify at-will employment to contractual and reversed the summary judgment. *Id.* at 827. The fact that the promise was for an indefinite period of time did not violate the Statute of Frauds because the contract *may* have lasted longer than one year but it was not a certainty. However, the Texas Supreme Court has noted that the *Morgan* court did not consider whether statements made to the employee were specific enough to constitute an enforceable contract, and disapproved of the case to the extent it reached a contrary holding to *Brown. See Brown,* 965 S.W.2d at 503. Consequently, the promise of job security does not constitute a valid cause of action or a separate cause of action apart from breach of contract. Thus, it can be dismissed on the same concept— that the oral promises were not specific or formal enough to constitute a contract. Summary judgment was properly granted on this issue.

decency and is utterly intolerable in a civilized society. *Wornick Co.*, 856 S.W.2d at 734 (citing RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1965)).

In *Southwestern Bell Mobile Systems, Inc. v. Franco*, 971 S.W.2d 52 (Tex.1998), the court considered whether appellees could recover for an intentional infliction of emotional distress where they had been allegedly fired in retaliation for reporting a sexual harassment claim. The court held "the mere fact of termination of employment, even if the termination is wrongful, is not legally sufficient evidence that the employer's conduct was extreme and outrageous under the rigorous standard that we established in *Twyman*." *Id.* at 54. *See also Wornick Co.*, 856 S.W.2d 732, 735 (Tex.1993) (holding that a security guard escorting a terminated employee off the premises did not reach the requisite level of outrageousness); *Diamond Shamrock Ref. & Mktg. Co. v. Mendez*, 844 S.W.2d 198, 202 (Tex.1992) (ruling that employer allegedly accusing an employee of thievery and firing him is insufficient to constitute outrageous behavior); *Beiser v. Tomball Hosp. Auth.*, 902 S.W.2d 721, 725 (Tex.App.—Houston [1st Dist.] 1995, writ denied) (concluding that termination in violation of a whistleblower statute is not in itself extreme and outrageous).

Gilmartin points to *Havens v. Tomball Community Hosp.*, 793 S.W.2d 690 (Tex.App.—Houston [1st Dist.] 1990, writ denied) as involving a similar situation where the court denied summary judgment on an intentional infliction of emotional distress cause of action. In *Havens*, a nurse refused to assist a doctor in a procedure she believed he was unauthorized to undertake. *Id.* at 691. As a result, other persons at the hospital began to harass, humiliate, and degrade her. *Id.* Throughout her subsequent employment at the hospital, the hospital allegedly caused her shame, professional humiliation, and economic loss to her past and future earning capacity. *Id.* The court overruled the defendants' motion for summary judgment because it concluded that Havens' allegation established a valid cause of action. *Id.* at 692.

As the court in *Wornick Co.* noted, however, *Havens* is distinguishable on the basis that it involved repeated or ongoing harassment of an employee. *Wornick Co.*, 856 S.W.2d at 736. The present case is based on a singular incident of termination where an employee received a letter of termination allegedly for improper or pretextual reasons. There was no harassment or outrageous conduct on the part of KVTV, nor did any behavior continue for an extended period of time. Gilmartin also relies on *Dean v. Ford Motor Credit Co.*, 885 F.2d 300 (5th Cir. 1989), and *Tidelands Auto. Club v. Walters*, 699 S.W.2d 939 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.), to note that in deciding an intentional infliction of emotional distress case, other courts have concluded that reasonable men could have reached different conclusions about whether the conduct was outrageous and, thus, the issue was a question for the jury. It is true that Texas courts have not yet developed a per se rule that termination from at-will employment cannot result in intentional infliction of emotional distress. Nevertheless, Texas courts have concluded that whether conduct is outrageous can be determined initially as a matter of law. *Wornick Co.*, 856 S.W.2d at 734.

■ Accepting Gilmartin's version of the events as true, we conclude, as a matter of law, that neither Gilmartin's termination nor the manner in which it was done constitute outrageous behavior. These facts do not reveal ongoing harassment or extreme circumstances. KVTV's behavior, as a matter of law, did not rise to the level of conduct that would "exceed all possible bounds of decency" and was not "utterly intolerable in a civilized community." *See Wornick Co.*, 856 S.W.2d at 735 (citing *Corum v. Farm Credit Services.*, 628 F.Supp. 707, 718–19 (D.Minn. 1986)). Consequently, we affirm summary judgment on this issue and overrule Gilmartin's third point of error.

FRAUD AND PROMISSORY ESTOPPEL

Gilmartin's pleadings allege that he was promised that he would not be terminated as long as he performed satisfactorily, that these promises were false because Gilmartin was in fact fired in spite of his adequate performance, that KVTV intended for Gilmartin to rely on this promise, that Gilmartin

relied on this promise, and that by doing so he was injured.

■ The elements of fraud are: (1) a false, material representation was made; (2) that was either known to be false when made or was made without knowledge of its truth; (3) that was intended to be acted upon; (4) that was relied upon; and (5) that caused injury. *See Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex.1998). The mere failure to perform a contract is not evidence of fraud. But a promise of future performance is actionable if—at the time the promise was made—the promisor intended to deceive and had no intention of performing. *See id.* at 48; *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986). The elements of promissory estoppel are: (1) a promise, (2) foreseeability of reliance on the promise by the promisor, and (3) substantial detrimental reliance by the promisee. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983).

■ KVTV argues that because Gilmartin's fraud claim is based on KVTV's alleged breach of a contract, Gilmartin is barred from asserting a cause of action in tort. In *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex.1991), the Texas Supreme Court noted that "[i]f the defendant's conduct ... would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." However, this principle has been disregarded in matters of fraudulent misrepresentation. The Texas Supreme Court has recently disapproved of the idea that "tort damages cannot be recovered for a fraudulent inducement claim absent an injury that is distinct from any permissible contractual damages." *Formosa Plastics Corp. USA*, 960 S.W.2d at 47. Even prior to *Formosa*, this court held that the *DeLanney* analysis did not apply to actions in fraud as such an analysis would virtually eliminate the tort of fraudulent misrepresentation in the procurement of a contract. *American Nat'l Ins. Co. v. International Business Machs. Corp.*, 933 S.W.2d 685, 687 (Tex.App.—San Antonio 1996, writ denied). Consequently, Gilmartin is not barred from bringing a cause of action

for fraud even though his contractual claim may be dismissed.

■ A central element of both equitable estoppel (or fraud) and promissory estoppel is detrimental reliance. *Collins v. Allied Pharmacy Management, Inc.*, 871 S.W.2d 929, 937 (Tex.App.—Houston [14th Dist.] 1994, no writ). Reliance on the promise must be reasonable and justified. *See American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex.1997); *Sipco Servs. Marine, Inc. v. Wyatt Field Serv. Co.*, 857 S.W.2d 602, 605 (Tex.App.—Houston [1st Dist.] 1993, no writ). In deciding the breach of contract issue in *Brown*, the court noted that "[o]nly when promises are definite and, thus, of the sort which may be reasonably or justifiably relied on by the employee will a contract claim be viable, not·when the employee relies on only vague assurances that no reasonable person would justifiably rely upon." *Brown*, 965 S.W.2d at 503 (quoting *Hayes v. Eateries, Inc.*, 905 P.2d 778 (Okla.1995)). While the *Brown* court was only considering the reasonableness of reliance for purposes of a contract claim, other courts have applied similar consideration to estoppel claims.

In *Collins*, the court rejected estoppel causes of action under the Statute of Frauds, but went on to note that the appellants had relied upon an agreement that provided for no specific length of time and that had no clear limit on the employer's freedom of action. *Collins*, 871 S.W.2d at 938. Consequently, the promise was "illusory and reliance on it was based upon appellants' subjective expectations and was unjustified." *Id.* The court concluded that, as a matter of law, neither promissory nor equitable estoppel is available to avoid termination at-will, and summary judgment was not improper. *Id.*

In *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 570 (Tex.App.—Dallas 1989, no writ), a physician brought suit against a hospital for promissory estoppel. However, the court held that any of the contracts, oral or written, were not sufficiently certain so as to enable the court to determine the rights of the parties. *Id.* at 568. (noting that the oral terms were that the hospital had a commitment to "upgrade the hospital's facilities,"

"make the level of patient care rise," and "build a new addition to the hospital facility"). Because the promises were too indefinite, the court affirmed the granting of the summary judgment on the issue of promissory estoppel. *Id.* at 570.

Similarly, here, we have already concluded that the terms of the oral promises were *too indefinite to constitute* a modification of at-will employment. These promises were equally too indefinite to permit estoppel causes of action. Kennedy informed Gilmartin that a writing was not necessary and that a commitment to more than one year was "doable." We hold that Gilmartin's pleadings do not indicate any promises or assurances specific or definite enough upon which reliance can be reasonably made. Consequently, we affirm the granting of the motion for summary judgment on Gilmartin's fourth and fifth points of error as well.