

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-22-00672-CV

**$8000.00 IN UNITED STATES CURRENCY AND
A 2006 HARLEY DAVIDSON FDX (VIN: 1HD1GP1156K304632)**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 218th Judicial District Court, Wilson County, Texas
Trial Court No. CVW2000726
Honorable Walden Shelton, Judge Presiding

Opinion by: Beth Watkins, Justice

Sitting: Rebeca C. Martinez, Chief Justice
Beth Watkins, Justice
Sandee Bryan Marion, Chief Justice (Ret.)[1]

Delivered and Filed: August 9, 2023

REVERSED AND REMANDED

This is an appeal of a summary judgment in a civil asset forfeiture case. We reverse the

summary judgment and remand for further proceedings.

### BACKGROUND

In September of 2020, Deputy Darrell Collins engaged in a pursuit with a motorcycle

registered to Chad Wade Spence. While that pursuit ended before officers apprehended the driver,

---

[1] The Honorable Sandee Bryan Marion, Chief Justice (Ret.) of the Fourth Court of Appeals, sitting by assignment of
the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN.§§ 74.003, 75.002, 75.003.

Collins contends Spence was the driver. Spence was later charged with and convicted of felony evasion.

On October 8, 2020, Deputy Rodney Dennis saw a motorcycle that resembled the one involved in the September pursuit parked outside of a Dollar General. Dennis pulled into the store's parking lot to "observe who came in and out of the store or approached the motorcycle." He also alerted Collins, who joined him in the parking lot. Based on the motorcycle's license plate number, the deputies confirmed it belonged to Spence but was a different motorcycle than the one involved in the September pursuit.

Dennis saw a man in a grey shirt exit the Dollar General and move toward Spence's motorcycle. When the man saw Dennis, he went back inside the store. Dennis then "observed a person with a grey shirt running from right to left along the back inside wall of Dollar General" in the direction of the back exit. Dennis "ran to the left side of the store" and "observed the door was swinging open and closed like someone had just run outside." Dennis subsequently found Spence, who was wearing a grey shirt, hiding approximately a block away. Dennis detained Spence and returned him to the Dollar General parking lot.

Meanwhile, Demi Kelley walked out of the Dollar General and approached Spence's motorcycle. Collins saw Kelley "grab[] a black bag off the gas tank to the motorcycle and start[] to walk away back towards the entrance to the store." Collins detained Kelley, and he questioned both Kelley and Spence about the black bag. Kelley said the bag was not hers, but she refused to tell Collins who owned it. Spence initially "acted as if he didn't know what bag [Collins] was talking about," then shook his head "no" when Collins pointed to the bag. Concluding the bag was abandoned property, Collins searched it. Inside, he found a handgun, a substance he believed to be methamphetamine, a scale, and $8,000 in cash. The deputies arrested Spence and Kelley.

On October 13, 2020, the State filed an original notice of seizure and intended forfeiture of the cash and motorcycle involved in this case. The State's petition named Spence and Kelley as the respondents. Kelley did not answer the forfeiture petition, and the trial court signed an interlocutory default judgment ordering that her interest in the cash and motorcycle, if any, was forfeited to the State.

Spence's answer to the forfeiture petition asserted: (1) he lawfully owned the motorcycle and purchased it with funds he obtained through legal employment; (2) the State's petition did not clearly state "where exactly the [contraband] items were found & how this would entitle the [State] the lawfull [*sic*] right to seizure of property"; (3) "the seizure of the property is not justified; in that there is no clear allegations as to the use of property in a criminal nature"; and (4) the State's petition failed "to clarify where property was located, or lawfull [*sic*] possession of the illegal items found with, or near the property in this cause."

During discovery, the State sent Spence interrogatories and requests for admission that asked him to admit several merits-preclusive issues, including whether he owned the seized property and whether that property was contraband. On November 9, 2020, the State filed a motion to compel arguing Spence "ha[d] made a blanket refusal to all of [the State's] discovery requests on the basis that it would violate his right to not incriminate himself." The trial court granted the State's motion and ordered Spence "to answer [the State's] discovery requests on a question-by-question basis[.]" Spence then answered "5th" to most of the State's interrogatories and requests for admission, including the merits-preclusive issues. Spence's responses also indicated that he planned to assert a defense of "unlawful seizure" to the forfeiture claim. The State filed a second motion to compel, which the trial court denied.

On March 2, 2022, Spence filed both a motion for summary judgment and a supplement to that motion. With his motion and supplement, Spence presented documents related to his purchase

of the motorcycle; paystubs and W-2s showing he had earned money from legitimate employment; a notarized statement from his mother that she had loaned him $10,000 to buy a truck; and a notarized statement from Kelley that Spence "was not aware of either the drugs or guns that were found in [Kelley's] bag." Kelley's statement also indicated that the cash in the bag belonged to Spence "and was not at any time a part of illegal activity." The trial court set Spence's motion for a hearing on May 9, 2022.

On June 7, 2022, the State filed its own motion for summary judgment. As support for its motion, the State presented affidavits from Collins and Dennis describing the events of October 8, 2020. Collins's affidavit stated that after Kelley was arrested, she told police Spence had instructed her to retrieve the black bag from the motorcycle and that she did not know what was in the bag "because [Spence] packed it." The State also presented a lab report showing that the substance Collins found in the bag was methamphetamine. Finally, the State presented Spence's discovery responses and argued that his invocation of the Fifth Amendment should be treated as deemed admissions.

Spence filed a response to the State's motion. While Spence's response did not include any attached evidence, it referred to the evidence attached to Spence's motion for summary judgment and argued that evidence "establish[ed] irrefutable material facts in opposition of [the] State's case." Spence's response specifically noted that while Kelley had told the police Spence packed the black bag, she "later controverted" that statement. Finally, Spence argued that his discovery responses were not conclusive judicial admissions because those statements were not deliberate, clear, and unequivocal and because the trial court had "advise[d] him to individually exert [*sic*] the 5th to each question" in the State's discovery requests.

On September 26, 2022, the trial court signed an order granting the State's motion for summary judgment. Spence timely filed this appeal.

**ANALYSIS**

***Standard of Review***

To be entitled to a traditional summary judgment, the movant must show there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). A movant is entitled to traditional summary judgment on its own claim if it conclusively proves all essential elements of the claim. TEX. R. CIV. P. 166a(c); *Compass Bank v. Durant*, 516 S.W.3d 557, 565 (Tex. App.—Fort Worth 2017, pet. denied). If the movant conclusively proves its own claim, the non-movant can avoid summary judgment by presenting evidence that raises a genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). However, a non-movant does not bear any burden to present controverting evidence unless and until the movant conclusively establishes its right to judgment as a matter of law. *See, e.g.*, *Rhone-Poulenc, Inc v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). A trial court considering a motion for summary judgment court may not weigh the parties' evidence or make credibility determinations because those matters are reserved for a factfinder. *See, e.g.*, *Thirty-Eight Thousand Four Hundred Dollars ($38,400.00) United States Currency v. State*, No. 04-18-00258-CV, 2019 WL 2605633, at *2 (Tex. App.—San Antonio June 26, 2019, no pet.) (mem. op.).

Where, as here, both sides moved for summary judgment on the same issue and the trial court granted one motion and denied the other, we review all the summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered.[2]

---

[2] Although the record shows Spence's motion for summary judgment was set for hearing, it does not contain an order explicitly denying that motion. However, because both sides' motions for summary judgment went to the same issue—whether the cash and motorcycle were contraband subject to forfeiture—we conclude the trial court's order granting the State's motion implicitly denied Spence's motion. *See, e.g.*, TEX. R. APP. P. 33.1(a)(2)(A); *Tex. Mut. Ins. Co. v. Ochoa*, No. 04-09-00401-CV, 2010 WL 2844464, at *5 (Tex. App.—San Antonio July 21, 2010, no pet.) (mem. op.).

*Tex. Mut. Ins. Co. v. PHI Air Med., LLC*, 610 S.W.3d 839, 846 (Tex. 2020). We must view the evidence in the light most favorable to the party against whom summary judgment was rendered. *See, e.g.*, *Viswanath v. City of Laredo*, No. 04-20-00152-CV, 2021 WL 1393976, at *3 (Tex. App.—San Antonio Apr. 14, 2021, no pet.) (mem. op.).

### *Applicable Law*

#### *Civil Asset Forfeiture in General*

"Property that is contraband is subject to seizure and forfeiture by the State." *One Thousand Six Hundred Four Dollars and Nine Cents ($1,604.09) in U.S. Currency v. State*, 484 S.W.3d 475, 478 (Tex. App.—Houston [14th Dist.] 2015, no pet.); Tex. Code Crim. Proc. Ann. arts. 59.01(2), 59.02(a). To be entitled to summary judgment on its forfeiture claim, the State was required to prove as a matter of law: (1) the cash and motorcycle were "contraband" because they were used or intended to be used in the commission of the felonies identified in the State's forfeiture petition; and (2) probable cause, which in the forfeiture context means "a reasonable belief that a substantial connection exists between the" seized property and the alleged criminal conduct. *One Thousand Six Hundred Four Dollars and Nine Cents ($1,604.09) in U.S. Currency*, 484 S.W.3d at 479–80 (internal quotation marks omitted). Without evidence of a link "between the property to be forfeited and the statutorily defined criminal activity that establishes probable cause . . . the State lacks authority to seize a person's property." *Fifty-Six Thousand Seven Hundred Dollars in U.S. Currency v. State*, 730 S.W.2d 659, 661 (Tex. 1987). While the State may rely on circumstantial evidence to support a forfeiture claim, summary judgment on such a claim is not appropriate if the evidence "requires a fact-finder to choose among opposing reasonable inferences." *One Thousand Six Hundred Four Dollars and Nine Cents ($1,604.09) in U.S. Currency*, 484 S.W.3d at 479, 481.

"After the State has proved the seized property is contraband, a person claiming an ownership interest in the property may raise an innocent-owner defense to prevent forfeiture." *El-*

*Ali v. State*, 388 S.W.3d 890, 893 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing TEX. CODE CRIM. PROC. ANN. art. 59.02(c)). "A person asserting this defense bears the burden of proving, by a preponderance of the evidence, that he did not know or should not reasonably have know[n] of the [allegedly criminal] act or omission that justified the seizure." *El-Ali*, 388 S.W.3d at 893 (internal quotation marks omitted). If the owner or interest holder makes the required showing, the "property may not be forfeited[.]" TEX. CODE CRIM. PROC. art. 59.02(c).

*Criminal Allegations at Issue Here*

In both its live petition and its motion for summary judgment, the State argued the motorcycle and cash were subject to forfeiture because: (1) Spence used or intended to use that property in money laundering and/or drug offenses; or (2) the property was the proceeds of money laundering and/or drug offenses. The State's petition and motion cited section 34.02 of the Texas Penal Code and sections 481.112 and 481.115 of the Texas Health and Safety Code.

Section 34.02 of the Texas Penal Code provides that a person commits money laundering if he "knowingly: (1) acquires or maintains an interest in, conceals, possesses, transfers, or transports the proceeds of criminal activity; (2) conducts, supervises, or facilitates a transaction involving the proceeds of criminal activity; (3) invests, expends, or receives, or offers to invest, expend, or receive, the proceeds of criminal activity or funds that the person believes are the proceeds of criminal activity; or (4) finances or invests or intends to finance or invest funds that the person believes are intended to further the commission of criminal activity." TEX. PENAL CODE ANN. § 34.02(a). For purposes of section 34.02, "'[p]roceeds' means funds acquired or derived directly or indirectly from, produced through, realized through, or used in the commission of" a criminal act. TEX. PENAL CODE ANN. § 34.01(3).

Section 481.112 of the Texas Health and Safety Code criminalizes the knowing manufacture, delivery, or possession with intent to deliver a controlled substance listed in Penalty

Group 1. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a). Section 481.115 of the Health and Safety Code criminalizes the knowing or intentional possession of a controlled substance listed in Penalty Group 1. TEX. HEALTH & SAFETY CODE ANN. § 481.115(a). Methamphetamine is a controlled substance listed in Penalty Group 1. TEX. HEALTH & SAFETY CODE ANN. § 481.102(6).

### *Application*

#### *The State's Motion for Summary Judgment*

In support of its motion for summary judgment, the State presented affidavits showing: (1) a motorcycle registered to Spence was parked in the Dollar General parking lot; (2) Spence walked out of the Dollar General, re-entered the store and left through the back door after he saw deputies in the parking lot, and was later found hiding a block away; (3) Kelley left the store, approached Spence's motorcycle, removed a black bag from the motorcycle, and started to go back into the store with the bag before deputies detained her; (4) the bag Kelley removed from Spence's motorcycle contained methamphetamine, a handgun, a scale, and $8,000 cash; and (5) Kelley told the police that Spence packed the bag and instructed her to remove it from the motorcycle. The State also presented Spence's discovery responses and argued they should be treated as deemed admissions that Spence disclaimed any ownership interest in the seized property and that the seized property was contraband subject to forfeiture. For the reasons described below, we will consider the affidavits and the purported deemed admissions separately.

When viewed in the light most favorable to Spence, the State's affidavits did not establish as a matter of law that either the motorcycle or the cash were the proceeds of criminal activity as defined by Texas's money laundering statute. *See* TEX. PENAL CODE §§ 34.01(3), 34.02(a); TEX. R. CIV. P. 166a(c). While the State appears to contend the affidavits "permitted a reasonable

inference that [Spence] obtained the seized [property] from selling drugs,"[3] we may not draw inferences against Spence in our review of the State's motion for summary judgment. *See Thirty-Eight Thousand Four Hundred Dollars ($38,400.00) United States Currency*, 2019 WL 2605633, at *2. Because the affidavits did not conclusively establish the required causal connection between the seized property and the State's allegations of money laundering, they did not satisfy the State's summary judgment burden for forfeiture on that ground. *See* TEX. PENAL CODE §§ 34.01(3), 34.02(a); TEX. R. CIV. P. 166a(c).

The affidavits also did not conclusively establish that Spence used or intended to use the motorcycle or the cash to "knowingly manufacture[], deliver[], or possess[] with intent to deliver" the drugs in the black bag. TEX. HEALTH & SAFETY CODE § 481.112; TEX. R. CIV. P. 166a(c). As with the money laundering allegation, the affidavits permitted, at most, an inference that Spence used or intended to use the seized property to engage in the alleged conduct. *Thirty-Eight Thousand Four Hundred Dollars ($38,400.00) United States Currency*, 2019 WL 2605633, at *2. Accordingly, the affidavits did not establish that the State was entitled to forfeiture as a matter of law on grounds that Spence manufactured, delivered, or possessed with intent to deliver a controlled substance. *See id.*; TEX. HEALTH & SAFETY CODE § 481.112; TEX. R. CIV. P. 166a(c).

Because the affidavits included evidence that the black bag contained methamphetamine and Kelley's statement that Spence packed the bag, they were arguably sufficient to show Spence knowingly or intentionally possessed methamphetamine. *See* TEX. HEALTH & SAFETY CODE § 481.115; TEX. R. CIV. P. 166a(c). But as Spence noted in his response to the State's motion for summary judgment (and presented evidence of in his own motion for summary judgment), Kelley

---

[3] The State's appellate brief twice uses the words "inference" and "infer" to describe the conclusions to be drawn from the evidence. Similarly, the State's response to Spence's motion for summary judgment argued that the evidence in this case would permit "a fact finder [to] find or reasonably infer that the currency was proceeds of or would be used to purchase narcotics, and that the motorcycle had been used to transport the narcotics and currency[.]"

later retracted her statement and averred that Spence "was not aware of either the drugs or guns that were found in [the] bag." At this stage of the litigation, the trial court lacked authority to determine which of Kelley's statements was more credible. *See Gilmartin v. KVTV-Channel 13*, 985 S.W.2d 553, 555 (Tex. App.—San Antonio 1998, no pet.) ("[A] summary judgment that involves the credibility of affiants will not be granted since it cannot be said that no genuine issue of fact exists."). Accordingly, the State's affidavits do not support a conclusion that the State was entitled to forfeiture as a matter of law on grounds of possession of a controlled substance. TEX. R. CIV. P. 166a(c); *One Thousand Six Hundred Four Dollars and Nine Cents ($1,604.09) in U.S. Currency*, 484 S.W.3d at 481.

For these reasons, the State's affidavits did not conclusively establish a nexus between the property to be forfeited and any of the alleged criminal activity the State relied on as probable cause for the forfeiture. *See* TEX. R. CIV. P. 166a(c); *Thirty-Eight Thousand Four Hundred Dollars ($38,400.00) United States Currency*, 2019 WL 2605633, at *2–3. The affidavits therefore did not establish that the State was entitled to judgment as a matter of law on its forfeiture claim.

The State argues, however, that Spence's invocations of the Fifth Amendment in response to the State's discovery requests are deemed admissions that bar him from disputing that the cash and the motorcycle were contraband subject to forfeiture. *See* TEX. R. CIV. P. 198.2(c). We disagree. "Constitutional imperatives favor the determination of cases on their merits rather than on harmless procedural defaults." *Marino v. King*, 355 S.W.3d 629, 634 (Tex. 2011). Where, as here, a party asks a trial court to treat discovery responses as deemed admissions as a "sanction to preclude a presentation of the merits," that request "implicate[s] the same due process concerns as other case-ending discovery sanctions." *Id.* at 632; *see also TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917–18 (Tex. 1991) (discussing proper application of merits-preclusive discovery sanctions). Those due process concerns require a showing that the responding party

acted with flagrant bad faith or callous disregard for the rules. *Marino*, 355 S.W.3d at 633–34; *Wheeler v. Green*, 157 S.W.3d 439, 443–44 (Tex. 2005) (per curiam). "Using deemed admissions as the basis for summary judgment . . . does not avoid the requirement of flagrant bad faith or callous disregard . . . it merely incorporates the requirement as an element of the movant's summary judgment burden." *Marino*, 355 S.W.3d at 634.

Here, the State argued during the summary judgment proceeding that Spence's "deemed admissions, *either alone or considered together with the State's affidavits*, establish that there is no genuine issue of material fact to be decided at trial[.]" (emphasis added). Because the State's affidavits did not conclusively establish its right to seize the cash and motorcycle, the deemed admissions are the sole evidence upon which we could theoretically affirm the summary judgment. *Cf. id.* at 629; *Wheeler*, 157 S.W.3d at 443. The State was therefore required to show, as an element of its summary judgment burden, that Spence's invocations of the Fifth Amendment constituted bad faith or callous disregard for the rules. *See Marino*, 355 S.W.3d at 634.

The State did not satisfy that burden. *See In re Rozelle*, 229 S.W.3d 757, 764 (Tex. App.—San Antonio 2007, orig. proceeding). In its motion for summary judgment, the State argued Spence's invocations of the Fifth Amendment were not proper discovery responses because "civil admissions may be used only in the case they are made in[.]" The State did not argue, however, that Spence's responses rose to the level of flagrant bad faith or callous disregard for the rules. Because the State did not assert this argument in its motion for summary judgment, we may not affirm the judgment on that basis. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 (Tex. 1993).

"The State's evidence that the [seized property] in this case is contraband is more than a scintilla but less than conclusive, and thus it cannot support the trial court's summary judgment." *One Thousand Six Hundred Four Dollars & Nine Cents*, 484 S.W.3d at 481; *Thirty-Eight*

*Thousand Four Hundred Dollars ($38,400.00) United States Currency*, 2019 WL 2605633, at *2–3. The trial court therefore erred by granting the State's motion for summary judgment. TEX. R. CIV. P. 166a(c).

*Spence's Motion for Summary Judgment*

Even if the State had carried its summary judgment burden, we could not affirm the judgment without considering Spence's competing motion for summary judgment. *See, e.g.*, *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (requiring appellate court, when reviewing competing motions for summary judgment, to determine all questions presented and render the judgment the trial court should have). In his motion, Spence argued:

> [N]o evidence is offered to establish knowledge of the presence of illegal contraband by Chad Spence, nor that he acted in a common design to further, in agreement, a crime as a party. . . . The mere fact that a previous passenger of a vehicle is in possession of illegal contraband is not enough to establish knowledge of the crime by vehicle owner. Further, not a single item of illegal contraband was found in actual possession of Chad Spence, nor on the motorcycle, that could be used to establish a connection between the owner and alleged behavior. Simply put, in laymen terms, no connection exists between Chad Spence and the narcotics found on Demi Kelley. Chad never had prior knowledge of the presence of drugs or guns. The bike was purchased lawfully with the proceeds of gainfull [*sic*] employment as a licensed refrigeration technician. The purchase was made in a Wells Fargo Bank in Waco Tx. & bill of sale notarized by bank officials. Funds are verifiable through pay stubs, IRS filings, accounting deposits from AAA Air Conditioning wereby [*sic*] I was employed at the time of bike's purchase in 2019.

As support for these assertions, Spence presented: (1) a June 22, 2019 bill of sale for the motorcycle; (2) paystubs and W-2s showing that Spence earned $29,791 in legitimate income between 2019 and 2020; (3) a statement from Spence's mother that she had loaned him $10,000 to buy a truck; and (4) a statement from Kelley that: (a) Spence was not aware of the drugs and guns in her bag; and (b) the cash in the bag belonged to Spence and "was intended to be used to purchase a vehicle & was not at any time a part of illegal activity."

This evidence, if credited by a factfinder, would support a conclusion that Spence was an innocent owner whose property was not subject to forfeiture. *See* TEX. CODE CRIM. PROC. art. 59.02(c). Under the proper standard of review, this evidence requires us to conclude the State was not entitled to summary judgment on its forfeiture claim. TEX. R. CIV. P. 166a(c); *One Thousand Six Hundred Four Dollars & Nine Cents*, 484 S.W.3d at 481.

## CONCLUSION

We reverse the trial court's summary judgment and remand the cause for further proceedings.

Beth Watkins, Justice