# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00031-CV

**Charles "Chip" Weersing, Appellant**

**v.**

**OneTouchPoint Southwest Corp. d/b/a Ginny's, Appellee**

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-004820, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Charles "Chip" Weersing appeals the trial court's grant of appellee OneTouchPoint's (OTP's) traditional motion for summary judgment in five issues. In his first issue, Weersing contends that the trial court erred by excluding emails between OTP employees and Weersing on hearsay grounds. In his second through fourth issues, he contends that the trial court erred by granting OTP's summary judgment motion because, as Weersing contends, there was a genuine issue of material fact for his three pleaded causes of action—breach of contract, promissory estoppel, and quantum meruit. In his final issue, Weersing contends that the trial court erred by granting OTP's motion for summary judgment because "OTP misstated the law regarding reliance and restitution damages recoverable under" his three pleaded causes of action. Because we conclude that Weersing was not harmed by the trial court sustaining OTP's hearsay objection and that the trial court did not err by granting OTP's traditional summary judgment motion, we affirm the trial court's judgment.

## BACKGROUND

Weersing worked for OTP, a marketing and supply chain management company, as an account executive in the sales department. His employment was terminated in December 2012. Weersing was rehired by OTP in January 2014. In October 2014, Weersing brought in the Condren account as a new account. In September 2015, Weersing was informed that his commissions on the account would be reduced to 5.5 percent due to low profitability of the account. Weersing alleged that the profitability issues were entirely the fault of OTP and out of his control. In May 2016, the commissions were reduced to 3 percent. In August of 2019, Weersing resigned from the company. Weersing filed his breach of contract suit against OTP alleging that he was promised 8 percent commissions on all new accounts for the first two years and then 5.5 percent commissions after that.

OTP filed a motion for traditional summary judgment. In support of its motion, it attached copies of two documents that are both titled "Payroll/Personnel Status Change Request." The first payroll document is dated December 27, 2012 and documents Weersing's termination from the company. The second is dated January 29, 2014 and documents Weersing's rehire with the company. The rehire document lists Weersing's job title as an account executive. Under a section for "other comments," the document states, "earns 8% com[mission] on everything until we transition com[mission] plan then he gets [standard] plan."[1]

---

[1] The record is unclear regarding what the terms of the "standard plan" referenced in the payroll form were. OTP's chief operating officer, Chris Greene, testified in his deposition that in January 2014 the standard plan was 8 percent on new accounts for two years and then 5.5 percent after that, but that the company maintained discretion to reduce the percentage based on profitability factors. However, Weersing testified in his deposition that he was told at the time he was hired that he would start at an 8 percent commission rate, which would change to the standard plan "once they came up with one."

Both payroll documents include an "officer authorization" signature but not Weersing's signature.

OTP also attached excerpts of Weersing's deposition transcript, which as relevant here included the following highlighted portions of testimony: when asked to describe how commissions work at OTP, Weersing stated "Well, when I was hired back, I was hired at an 8 percent commission rate and was told that that would change to the standard plan once they came up with one"; when asked what the terms of his contract for commissions was, he stated that "it was 8 percent for two years on all new work and 5 and a half percent thereafter," but that there "was not a timeline" for when the transition to the standard plan would take place and that "nothing was ever signed," and that in exchange for his promised commission rate he promised future work without a set timeframe; and when asked if the contract was written or oral, Weersing testified that it was written and that the contract was his rehire document and admitted that it did not include what he promised to do in exchange for a set commission rate.

OTP also attached an unsworn declaration by Chris Greene, who was the chief operating officer of OTP at the time of trial. Green stated that "OTP has always had a policy of adjusting commissions on accounts when they are not sufficiently profitable," that this was "a long-standing policy that all OTP salespersons knew or should have known," and that the Condren account "was never particularly profitable." OTP also attached exhibits showing that the Condren account had lower profitability than other accounts managed by OTP.

Weersing provided the following evidence in opposition to OTP's summary judgment motion: excerpts from his own deposition with highlighted portions that focused on Weersing's testimony that he expected to receive 8 percent commission on the Condren account and explaining his reasoning for his belief that the low profitability of the account was the fault

of others in OTP and not his own; excerpts from the deposition of Greene that focused on discussion of the production issues that affected the Condren account; a copy of the rehire payroll form; and a series of emails sent from or to Weersing regarding his commissions for the Condren account.

OTP objected on hearsay grounds to the emails that Weersing included in his summary judgment evidence. Weersing responded, arguing that the objections were too vague and arguing that various hearsay exceptions applied. The trial court sustained OTP's hearsay objection to the emails. The trial court granted OTP's traditional motion for summary judgment and dismissed Weersing's three causes of action with prejudice. Weersing appealed.

### STANDARD OF REVIEW

A party moving for traditional summary judgment must demonstrate that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c). "We review summary judgments de novo, viewing the evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022). When, as here, the trial court does not specify the grounds for granting the motion, we must uphold the judgment if any of the grounds asserted in the motion and preserved for appellate review are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). A genuine issue of material fact exists if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (citing *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

4

Evidence does not create an issue of material fact if it is "so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Id.* (citing *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)).

We review evidentiary rulings, including those connected to a summary judgment motion, for an abuse of discretion. *See Starwood Management LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (per curiam). We do so by considering whether the trial court acted "without reference to any guiding rules and principles." *Id.* Even if evidence was erroneously excluded, we will not reverse unless appellant shows that the error was harmful. *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000); Tex. R. App. P. 44.1(a).

## ANALYSIS

### *The Excluded Emails*

Weersing contends that the trial court erred by excluding a set of emails discussing the reductions in his commission rate based on hearsay. He contends that OTP's hearsay objection was too vague and that the statements in the emails were admissible because multiple hearsay exceptions applied. In contending that the exclusion of the emails was harmful error, Weersing alleges that "each email, in itself, created a genuine issue of material fact that precluded summary judgment." Contained within the emails sent by Weersing are the following statements that we understand Weersing to allege would have created a genuine issue of material fact if not excluded: "My deal made long ago was for 8%," and, "My deal I made long ago was for 8% commission." We also understand the statement from the work email sent to Weersing that he contends would have created a genuine issue of material fact to be, "This change does not have to be forever." We further understand Weersing to contend that his reference to a "deal"

and his manager's acknowledgment that there had been a "change" to his commission rate to be evidence of a contract between the parties for an 8 percent commission rate.

Evidence of OTP's acknowledgment that Weersing's commission rate had been changed and Weersing's assertion that he had a "deal" for 8 percent commission also appeared in the summary judgment evidence considered by the court. Specifically, Greene testified that Weersing's commission was set at 8 percent with a plan to transition to a standard plan and Greene's declaration stated that the company had a policy of adjusting commissions on accounts based on profitability. Weersing testified during his deposition that his "deal was 8 percent." Thus, the complained of excluded statements are cumulative and any error was harmless. *See Able*, 35 S.W.3d at 617–18 (holding that even if exclusion of evidence was error, it was harmless error because excluded evidence was cumulative).

Assuming without deciding that the trial court erred by excluding the emails, we conclude that any error was harmless. Tex. R. App. P. 44.1(a). We overrule Weersing's first issue.

### Breach of Contract

Weersing contends that the trial court erred by granting OTP's traditional summary judgment motion and dismissing his breach of contract claim because, as he contends, the summary judgment evidence established a genuine issue of material fact. "The essential elements of a breach-of-contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

6

The first element, whether there was a valid contract, is dispositive here. Weersing contends that the payroll form is either a written unilateral contract or is evidence of an oral unilateral contract to pay Weersing 8 percent commission on all new accounts for two years, and that the written or oral unilateral contract became binding when Weersing performed under the contract. "A unilateral contract . . . is created by the promisor promising a benefit if the promisee performs. The contract becomes enforceable when the promisee performs." *Vanegas v. American Energy Services*, 302 S.W.3d 299, 302 (Tex. 2009) (cleaned up). OTP contends that there was no contract for a fixed commission rate. Specifically, OTP relies on its summary judgment evidence of the rehire payroll form that states that the commission rate may be changed at an indefinite time, it's corporate officer's testimony that the company had a long standing policy of adjusting commission rates to match profitability of accounts, and the lack of any specific terms in the rehire payroll form regarding what Weersing was required to do for an account before being entitled to a commission.

The record is silent regarding what performance Weersing had to complete on an account for the commission to vest his 8 percent commission. Weersing contends that his required performance was to perform his job duties as an account executive. In his summary judgment response and reply filed in the trial court he alleged that his commission had vested when he performed as required. However, there is nothing in the summary judgment evidence of what was required of him for the commissions to vest, that he did that specific thing, or when it happened to create a fact issue that would preclude summary judgment. *See American Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994) ("A mere pleading or a response to the summary judgment motion does not satisfy this burden of coming forward with sufficient evidence to prevent summary judgment."). Additionally, the record is silent regarding who Weersing made

7

the alleged oral contract with and how that person had the authority to bind the company to such an agreement.

Because OTP's evidence demonstrated that there is not a genuine issue of material fact regarding the existence of a contract and Weersing's evidence does no more than create a mere surmise or suspicion that the fact exists, we conclude that the trial court did not err by dismissing Weersing's breach of contract claim. We overrule Weersing's second issue.

### Quantum Meruit

Weersing's third issue contends that the trial court erred by dismissing his quantum meruit cause of action. Quantum meruit is an equitable remedy based on the promise implied by law to pay for beneficial services rendered and knowingly accepted when there is no express contract for the services. *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex.1990). To recover under the equitable theory of quantum meruit, the claimant must prove that:

> (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Id.* Recovery of damages is proper when nonpayment would result in unjust enrichment to the party that benefited from the work. *Id.*

Because it is dispositive, we address the fourth element of quantum meruit. OTP provided uncontroverted evidence that it was a longtime policy of the company to reduce commissions on an account based on profitability. Furthermore, the payroll form documenting

8

Weersing's rehire stated the company's intention to transition Weersing to a different plan with an unspecified rate at an unspecified time. The record is silent regarding any reasonable notice to the company at the time he was hired that Weersing expected a fixed commission rate contrary to company policy.

Because OTP's evidence established that there is no genuine issue as to a material fact regarding reasonable notice to OTP of any expectation by Weersing of a fixed commission rate contrary to company policy, the trial court did not err by dismissing Weersing's quantum meruit cause of action. We overrule Weersing's third issue.

### Promissory Estoppel

Weersing's fourth issue contends that the trial court erred by dismissing his promissory estoppel cause of action. We understand Weersing to contend that his initial and continuing work on the Condren account, including work done after his commission was reduced, was done in reliance that all commissions for two years would be at a fixed 8 percent rate. He testified in his deposition that he would not have worked at OTP at all if he was not offered a fixed 8 percent commission rate.

Weersing testified in his deposition that he "was hired at an 8 percent commission rate and was told that that would change to the standard plan once they came up with one." He also testified that "in 2014, it was 8 percent until they transitioned to another plan.· We really never got another plan, but it was told to us that it was 8 percent for two years on all new work and 5 and a half percent thereafter." When asked what he understood the timeline to be to transition to the "standard plan" he testified that "[t]here was no timeline." Greene stated in his declaration that it had been a long-time company policy that all employees should know that the

9

commission rate would be adjusted based on profitability. Additionally, Weersing's rehire payroll form reads, "earns 8% on everything until we transition com[mission] plan, then he gets [standard] plan."

"The requisites of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). Weersing's testimony that he was hired at 8 percent commission until that was changed to a standard plan and that no timeline was ever given combined with Greene's uncontroverted testimony that the company had a long-time policy of adjusting commissions based on the profitability of an account, renders the alleged "promise" "too vague and indefinite to be enforced in a suit for promissory estoppel." *Ellen v. F.H. Partners, LLC*, No. 03-09-00310-CV, 2010 WL 4909973, at *6 (Tex. App.—Austin Dec. 1, 2010, no pet.) (mem. op.) (citing *Gilmartin v. KVTV-Channel 13*, 985 S.W.2d 553, 558-59 (Tex. App.—San Antonio 1998, no pet.). Further, the "[r]eliance on the promise must be reasonable and justified." *Gilmartin*, 985 S.W.2d at 558. Here, the alleged promise came with "no specific length of time and with no clear limit on the employer's freedom of action" resulting in the reliance being based on "subjective expectations and was unjustified." *Collins v. Allied Pharmacy Mgmt., Inc.*, 871 S.W.2d 929, 938 (Tex. App.—Houston [14th Dist.] 1994, no writ).

Because OTP's evidence established that there is no genuine issue of material fact of a promise that was reasonably relied on, the trial court did not err in dismissing Weersing's promissory estoppel claim. We overrule Weersing's fourth claim.

10

*Damages*

Weersing's final issue contends that the trial court erred in granting summary judgment because OTP misstated the law regarding damages for all three causes of action. Because we have concluded that OTP is entitled to judgment as a matter of law because it demonstrated that there is no genuine issue of material fact regarding an element or elements for each cause of action other than damages, we do not need to address his final issue. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

## CONCLUSION

Because we overruled Weersing's first four issues and did not reach his fifth, we affirm the trial court's judgment dismissing his three causes of action on traditional summary judgment.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Smith
  Dissenting Opinion by Justice Triana

Affirmed

Filed:   January 31, 2024

11